Ward-WC v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-083-CR

     WILLIE CHARLES WARD,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 194th District Court
Dallas County, Texas
Trial Court # F93-03817-M
                                                                                                    

O P I N I O N
                                                                                                    

      A jury convicted Willie Ward of aggravated assault with a deadly weapon and assessed
punishment at seven years in prison. See Tex. Penal Code Ann. § 22.02 (Vernon 1995). He
appeals on two points, asserting that the court erred in admitting evidence of two prior assaults
against the victim and in failing to instruct the jury on the limited use of the extraneous evidence. 
We will affirm the judgment.
      Sheila Smith, the complainant, was shot in the neck on September 26, 1992, with a gun held
by Ward. Ward gave a statement to police a few days after the shooting stating that the gun had
gone off accidentally. The State sought to prove that Ward shot Smith intentionally. At the time
of the shooting, Ward and Smith were romantically involved; however, the relationship was
deteriorating. 
      Smith testified that, on the evening of the shooting, she and two of her cousins, Kim Cook
and Simone Gaston, were playing dominos at Smith's apartment. Ward arrived at the apartment
around 9:30 p.m. Gaston, who lived nearby, left shortly thereafter for her home. Ward and Cook
walked to a nearby store for chips and for Ward to use the phone. Smith told them that she was
going to Gaston's house and that she would lock Ward and Cook out of the apartment if they were
not back before she returned.
      All three returned to Smith's apartment at the same time. Cook went into the apartment first,
followed by Ward and Smith. Smith testified that Ward "pushed" her in the eye, blurring her
vision. He then pushed her to the floor, got on top of her—pinning her arms to her side—and
pointed the gun between her eyes. Cook came in from the kitchen, saw Ward on top of Smith,
and told them not to "start this again." Ward got up, and Smith left the apartment to call the
police. As she walked through the apartment complex, she heard Ward's voice behind her say,
"I'm tired of this shit." She looked back, saw Ward, and then "felt [her]self falling." Smith
thought that Ward had hit her. She did not know that she had been shot. She later learned that
the bullet entered her neck just to the right of her spine and exited under her right eye.
      Smith further testified that on two prior occasions, Ward had hit or slapped her. On one
occasion, he had hit her with a can of unopened beer. On another occasion, Ward had slapped her
when she refused to ask friends to leave her apartment as he requested. 
      Cook testified that, as she and Ward were walking home from the store that night, he showed
her his gun. When they returned to Smith's apartment, Cook went into the kitchen. When she
returned to the living area, she saw Ward on top of Smith with his back towards Cook. She did
not see the gun. Cook told Ward, "Don't start that again." Ward released Smith, and Smith left
the apartment saying, "I know who'll take care of this. I'm going to use the phone." Ward
followed Smith. Cook left the apartment shortly thereafter to see whether Smith was "o.k." She
encountered Ward walking towards her with the gun in his hand and his finger on the trigger. 
Cook asked, "Don't tell me that you shot Sheila." Ward responded, "I'm sorry. Call the
ambulance."
      Fred Davis, a security guard for the apartment complex, testified that he was patrolling the
complex when he heard a "pop." He walked in the direction from which the sound had come. 
He saw Ward standing over Smith who was lying in the parking lot. Smith was bleeding from her
eye. Davis asked Ward what had happened. Ward said he thought she had been shot. Davis and
Ward carried Smith to the complex's washateria. Davis asked Ward to call for paramedics. After
Smith was transported to the hospital, Davis saw Ward around the complex and tried to speak with
him. Davis testified that Ward walked away and, as Davis attempted to follow, Ward began to
run. Davis gave up the chase. He found the gun in a flower bed at the complex.
      Ward's testimony about the events leading up to the shooting was similar to that of Smith and
Cook. He admitted that he had shoved Smith to the floor in her apartment, but denied sitting on
top of her. He testified that he did have the gun in his hand when he shoved Smith down, but that
he did not point it at her. When Smith left the apartment to "make a call," Ward followed her to
"apologize"—still carrying the gun in his right hand. He testified that he saw her in the parking
lot, bending down as if she were tying her shoes. He walked up behind her and grabbed her
shoulders. As she raised up, the gun went off. Ward testified that he did not intentionally shoot
Smith. He stated that he voluntarily gave the gun to Davis the evening of the shooting. 
      Larry Fletcher, a firearms examiner, was called by the State in rebuttal. He testified about
the mechanics of Ward's semiautomatic .380 caliber handgun. Fletcher testified that it was
unlikely that the gun would have discharged unless the trigger had been pulled. 
      In his first point, Ward complains that the court erred in admitting, over his timely objection
under article 19.06 of the Penal Code, evidence of his two prior assaults on Smith. Prior to
beginning its case-in-chief, outside the presence of the jury, the State questioned Smith about the
prior incidents in which Ward had struck her. At the conclusion of Smith's testimony, the
prosecutor stated, "The State just contends that the incidences that the witness has testified to show
a relationship with [Ward] and, therefore, are admissible." Ward objected that the evidence was
not admissible under section 19.06 because he was not charged with murder or voluntary
manslaughter. Ward further objected that the evidence was character evidence inadmissible under
Rule 404(b) of the Rules of Criminal Evidence. The State made no response to Ward's objections. 
The court allowed the evidence on the grounds that, in an assault case, the "relationship between
the parties is admissible." 
      Section 19.06(a) of the Penal Code states:
      Evidence
(a) In all prosecutions for murder or voluntary manslaughter, the state or the
defendant shall be permitted to offer testimony as to all relevant facts and circumstances
surrounding the killing and the previous relationship existing between the accused and the
deceased, together with all relevant facts and circumstances going to show the condition of
the mind of the accused at the time of the offense.

Tex. Penal Code Ann. § 19.06(a) (Vernon Supp. 1994) (emphasis added).


 The State argues
that section 19.06 has been applied to lesser-included offenses of murder and voluntary
manslaughter and, thus, should be applied to the lesser-included offense of assault. Hall v. State,
640 S.W.2d 307, 309 (Tex. Crim. App. 1982) (attempted murder); Dunlap v. State, 462 S.W.2d
591, 594 (Tex. Crim. App. 1971) (assault with intent to murder; evidence that defendant killed
another victim but, because his gun jammed, only wounded second victim was admissible). Ward
was indicted and tried for the third-degree felony of aggravated assault. The plain reading of
section 19.06 shows its inapplicability because Ward was not being prosecuted for murder or
voluntary manslaughter. See Tex. Penal Code Ann. § 19.06. Thus, under the facts of this case
and the applicable case law, section 19.06 does not provide a basis for admitting the prior
incidents. See id.
      However, we must next look to whether the trial court properly admitted the evidence
although under an erroneous theory. See Sewell v. State, 629 S.W.2d 42, 45 (Tex. Crim. App.
[Panel Op.] 1982). We note that the Practice Commentary following section 19.06 questioned the
need for the provision because traditional rules of evidence allow evidence relevant to a
defendant's mental state. Seth S. Searcy III & James R. Patterson, Practice Commentary, Tex.
Penal Code Ann. § 19.06 (Vernon 1989). Prior to its repeal, section 19.06(b) allowed a
defendant who raised justification as a defense to murder or manslaughter to introduce "relevant
evidence" of family violence and "relevant expert testimony" on the condition of the defendant's
mind. Tex. Penal Code Ann. § 19.06(b) (Vernon Supp. 1994) (repealed 1994). Thus, it
appears that section 19.06 was a specific codification of what evidence was "relevant" and
"admissible" in the prosecution of certain crimes.
      "Relevant evidence" is evidence having any tendency to make the existence of any fact that
is of consequence to the determination of the action more or less probable than it would be without
the evidence. Tex. R. Crim. Evid. 401. All relevant evidence is admissible except as otherwise
provided by constitution, statute, or evidentiary rule. Id. 402. Evidence of other crimes, wrongs,
or acts is not admissible to prove the character of a person in order to show that he acted in
conformity therewith. Id. 404(b). However, it may be admissible for other purposes, such as
proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake
or accident. Id.
      Ward objected that the evidence was inadmissible under Rule 404(b). Once a 404(b)
complaint is lodged, "it is incumbent upon the proponent of the evidence to satisfy the trial court
that the `other crime, wrong, or act' has relevance apart from its tendency `to prove the character
of a person in order to show that he acted in conformity therewith.'" Montgomery v. State, 810
S.W.2d 372, 387 (Tex. Crim. App. 1991) (on rehearing). The court should honor any request
by the opponent of the evidence for articulation in the record of the purpose for which the evidence
is offered. Id. 
      The court, although citing section 19.06, implicitly ruled that the evidence was "relevant" for
a purpose other than to show Ward's character and that he acted in conformity therewith. The
court allowed the testimony to show the "relationship" between Smith and Ward. Rule 404(b)
allows the admission of extraneous offenses for "other purposes." See Tex. R. Crim. Evid.
404(b). Although the State did not clearly articulate an "other purpose" listed in Rule 404(b), it
is apparent that the court allowed the testimony to show the "relationship" between Ward and
Smith, thus being relevant to Ward's "intent" and "absence of mistake or accident" in shooting
Smith. See id. We do not find that the court erred in allowing the testimony.


 We overrule point
one.
      In his second point, Ward complains that the court erred in failing give his requested
instruction to the jury limiting its consideration of the extraneous offenses. At the close of the
trial, prior to the charge being read to the jury, Ward requested the court to limit the jury's
consideration of the extraneous offenses:
      Defense Requested Instruction No. 1:
You are instructed that certain evidence was admitted before you in regard to the
defendant's having committed an offense or offenses other than the one for which he is now
on trial. Such evidence cannot be considered by you against the defendant as any evidence
of guilt in this case. Said evidence was admitted before you for the purpose of aiding you if
it does, in explaining the prior relationship between the defendant and the complainant.
The court refused the requested instruction. 
      When evidence is admissible for one purpose but not admissible for another purpose, "the
court, upon request, shall restrict the evidence to its proper scope and instruct the jury
accordingly." Tex. R. Crim. Evid. 105. When evidence is admitted under Rule 404(b) then,
upon a timely request, the court should instruct the jury that the evidence is limited to whatever
purpose the proponent has persuaded him it serves. Montgomery, 810 S.W.2d at 388.
       Assuming that the court should have instructed the jury as requested, we do not automatically
reverse the conviction. Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Charge
error results in a reversal if the error was calculated to injure the rights of the defendant or if it
appears from the record that the defendant did not receive a fair and impartial trial. Tex. Code
Crim. Proc. Ann. art. 36.19 (Vernon 1981). Where, as we have here, the defendant has timely
objected, we search only for "some harm." See Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1985) (on rehearing). However, the burden lies with the defendant to persuade the
reviewing court that he suffered some actual harm as a result of the charging error. See Abdnor,
871 S.W.2d at 372.
      The degree of harm "must be assayed in light of the entire jury charge, the state of the
evidence, including the contested issues and weight of probative evidence, the argument of counsel
and any other relevant information revealed by the record of the trial as a whole." Almanza, 686
S.W.2d at 171. The record reveals that Smith was questioned briefly about the prior occasions. 
Ward was not cross-examined on the incidents. The State did not mention the extraneous offenses
in its closing arguments. We do not find that Ward suffered "some actual harm" as a result of the
court's failing to give the requested instruction. See Abdnor, 871 S.W.2d at 372. We overrule
point two and affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 15, 1995
Do not publish